# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

JAIME E. HALL,

        Plaintiff,

vs.

ANDREW M. SAUL, Commissioner of Social Security,[1]

        Defendant.

No.  18-CV-2032-LTS-KEM

**MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION**

## I.  INTRODUCTION

This case is before me on a Report & Recommendation (R&R) by the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge.  Doc. No. 19.  Judge Mahoney recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Jaime Hall's application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, et. seq. *Id.*  Hall filed timely objections to the R&R.  Doc. No. 20.  The Commissioner has not responded.

## II.  APPLICABLE STANDARDS
### A.  *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact,

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019.  Pursuant to Federal Rule of Civil Procedure 25(d), he has been substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003) (quoting *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998)). The Eighth Circuit has explained that the standard "is something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991)).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). However, the court does not "reweigh the evidence presented to the ALJ," *id.* at 555, or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citation omitted).

If, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (citation omitted). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is

not subject to reversal simply because some evidence may support the opposite conclusion.").

## B.     *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III.    THE R&R

Hall filed for DIB on August 25, 2014, alleging an onset date of May 27, 2013. AR 61–62, 168–71.   She claimed disability due to fibromyalgia, reflex sympathetic dystrophy/complex regional pain syndrome (RSD/CRPS), migraines, arthritis, depression, anxiety, multiple sclerosis and knee problems. *Id.* at 61, 69, 73.   The Social Security Administration (SSA) denied Hall's application initially on January 12, 2015, and on reconsideration on April 28, 2015. *Id.* at 61–92, 94, 99.   After a hearing, an Administrative Law Judge (ALJ) found that Hall suffered from the following severe impairments: migraines, fibromyalgia, RSD/CRPS, cerebral microvascular disease, diabetes mellitus, degenerative joint disease of the right shoulder, gout, depression, anxiety, carpal tunnel syndrome, degenerative disc disease of the cervical, thoracic and lumbar spine and obesity. *Id.* at 15.   The ALJ found that none of these impairments, individually or in combination, "met or medically equaled the severity of" a listed impairment. *Id.* at 16.   The ALJ specifically considered Listings 1.04, 12.04 and 12.06. *Id.*

Although the ALJ determined that Hall's residual functional capacity (RFC) prevents her from performing any past relevant work, the ALJ ultimately found that other work existed in significant numbers that Hall could perform, such as addresser, eye glass frames polisher and surveillance systems monitor. *Id.* at 21–22.   Thus, the ALJ concluded that Hall was not disabled at any time from May 27, 2013, to March 31, 2017, the date last insured. *Id.* at 22.   The Appeals Council denied Hall's request for review on March 12, 2018. *Id.* at 1–3.   Hall then filed a timely complaint requesting judicial review by this court. *See* Doc. Nos. 1, 3; *see also* 20 C.F.R. § 422.210(c).

Hall argues that the ALJ erred in determining she was not disabled because (1) the ALJ's step-five conclusions were not supported by substantial evidence due to an alleged conflict between the Dictionary of Occupational Titles (DOT) and the VE testimony relied

4

upon, (2) the ALJ improperly discounted the testimony of Hall's treating physician, (3) the ALJ failed to properly address whether Hall's unlisted impairments are medically equivalent to any listings at step three and (4) the ALJ who decided Hall's claim was not properly appointed as required by the Supreme Court's recent interpretation of the Appointments Clause in *Lucia v. SEC*, 138 S. Ct. 2044 (2018). Judge Mahoney issued her R&R on August 16, 2019. Doc. No. 19.

Judge Mahoney first addressed Hall's argument that the ALJ erred by failing to consider certain listings. Judge Mahoney found that any error in failing to consider the listings specified by Hall was harmless. *Id.* at 8, 14. Judge Mahoney first addressed Listing 14.09D, a listing for inflammatory arthritis, which the SSA has stated an ALJ may consider in determining whether a claimant's fibromyalgia medically equals a listing. *Id.* at 6 (citing and discussing SSR 12-2p, 2012 WL 3104869 (July 25, 2012)). After noting that Listing 14.09D requires evidence that the claimant's impairment limits activities of daily life, maintaining social functioning, or the ability to complete tasks in a timely manner due to deficiencies in concentration, persistence or pace, Judge Mahoney found that "[s]ubstantial evidence supports the ALJ's conclusion that Hall did not suffer" such limitations. *Id.* at 7. Judge Mahoney noted that Hall did not challenge the ALJ's RFC findings or provide "argument[s] regarding how her impairments medically equal the severity of Listing 14.09D." *Id.* Judge Mahoney then found that the extensive evidence of Hall's daily activities and interactions with others "demonstrate[d] the ability to go out in public places and interact with people" with "only moderate limitations in concentration, persistence, and maintaining pace." *Id.* at 7–8.

Judge Mahoney then addressed whether the ALJ erred by failing to consider whether Hall's migraines medically equaled the severity of Listing 11.02 regarding seizures.[2] *Id.* at 8–15. Judge Mahoney found that substantial evidence supports the

---

[2] Judge Mahoney noted that Listing 11.02 regarding seizures was addressed by two listings— 11.02 and 11.03—prior to 2016. Doc. No. 19 at 9. Judge Mahoney found that former Listing

ALJ's conclusions that Hall was able to control her migraines with treatment and that the record contained little evidence of severe migraines or headaches since January 2015. *Id.* at 10–11. Judge Mahoney found this dispositive because "Listing 11.02 equivalency requires experiencing these kinds of symptoms *with treatment*." *Id.* at 10. Ultimately, Judge Mahoney concluded that "[a]ny error by the ALJ in failing to explicitly consider and analyze Listing 11.02 was harmless given the ALJ's findings regarding Hall's migraines in his discussion of her RFC, which was supported by substantial evidence."[3] *Id.* at 14.

Next Judge Mahoney addressed Hall's argument regarding the weight the ALJ gave her treating physician's medical opinion. *See id.* at 15–20. Judge Mahoney found that the ALJ did not err in giving only partial weight to the opinion of Hall's treating physician, Daniel Glascock, M.D. *Id.* at 20. Judge Mahoney stated that the ALJ could properly find that the evidence in the record was inconsistent with "the extreme limitations found by Dr. Glascock," particularly regarding Hall's ability to sit for extended periods of time and use her fingers, hands and arms. *Id.* at 16–19. Judge Mahoney concluded that the ALJ's summary of Hall's treatment history and daily activities in the RFC analysis provided "good reasons" for discounting Dr. Glascock's opinion and were supported by substantial evidence. *Id.* at 20.

Next Judge Mahoney addressed Hall's arguments regarding a potential conflict between the ALJ's mental RFC determinations, the Vocational Expert (VE) testimony

---

11.03 regarding nonconvulsive seizures "appears most similar to subpart B of the current Listing 11.02" and was most relevant to this case. *Id.*

[3] Judge Mahoney explained in a footnote that

> Hall also argues that "the record . . . warranted an evaluation of a Listing for RSD/CRPS medical equivalence." Hall does not identify which listing the ALJ should have considered, nor offer any argument how her impairments equaled the severity of such a listing. As such, I do not find that this argument warrants remand.

Doc. No. 19 at 6 n.6 (citation omitted).

and the DOT. *Id.* at 20–29. "Hall argues that the DOT description of the surveillance system monitor position conflicts with the VE's testimony," and thus it should not have been included by the ALJ when determining whether a significant number of jobs exist in the national economy which a person with Hall's RFC could perform. *Id.* at 21; *see also* Doc. No. 13 at 3. Specifically, Hall argues that the RFC's statement limiting Hall to only "work involving simple, routine instructions and tasks" is fundamentally inconsistent with the reasoning level of three required by the position of surveillance system monitor. Doc. No. 19 at 22.

Judge Mahoney ultimately concluded that no "apparent conflict existed between the VE's testimony and the DOT." *Id.* at 29. After defining and distinguishing Specific Vocational Preparation ratings (SVP) from Reasoning Levels and discussing the cases cited by Hall and the Commissioner, Judge Mahoney stated:

> The ALJ's limitation to simple and routine instructions must be read in context: the ALJ limited Hall to "remember[ing], understand[ing], and carry[ing] out simple, routine instructions and tasks *consistent with* SVP levels 1 or 2 type jobs." By stating that Hall's simple-work limitation was consistent with jobs with an SVP level of one or two, the ALJ found Hall's SVP level limited, but not her reasoning level.

*Id.* (alterations in original). Judge Mahoney expressly "decline[d] to decide whether a reasoning level of three is an 'apparent conflict' with an RFC limitation to simple and routine instructions and tasks." *Id.* Judge Mahoney also declined to decide whether it was harmless error to use the surveillance system monitor position in making step five decisions because it "is a close issue" whether the remaining 9,600 jobs in the national economy identified by the VE would have been a significant number had the surveillance position been excluded due to conflicts between the VE testimony and the DOT. *Id.* at 29 n.8.

Finally, Judge Mahoney addressed Hall's Appointments Clause challenge. *Id.* at 30–34. Judge Mahoney noted that "[e]very district court in the Eighth Circuit to address the issue (including the Northern District of Iowa) has found a Social Security claimant's

Appointments Clause challenge raised for the first time on judicial review to be forfeited." *Id.* at 33. Judge Mahoney adopted the reasoning of these cases and recommends rejecting Hall's Appointments Clause challenge. *Id.* at 11.

## IV.    ANALYSIS

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Each of these steps may be dispositive in a claimant's case. *See* 20 C.F.R. § 1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step."). Because Hall argues that the ALJ erred at multiple steps of the five-step process and each step may be dispositive, I will address each argument according to its place in the five-step evaluation process.

Hall's objections largely echo the arguments raised in her principal brief. She faults the ALJ's analysis at step three. She argues that the ALJ erred by not evaluating whether migraines, headaches, fibromyalgia and RSD/CRPS are medically equivalent to listings such as 11.02 and 14.09D. Doc. No. 13 at 10–12. She further argues that "the R&R erred by splitting the record in two" to analyze her headaches and migraines pre-

and post-treatment. Doc. No. 20 at 5. Hall argues that treatment for migraines and headaches proceeded throughout the entire relevant period, and even if the ALJ correctly disregarded her headaches and migraines due to her improved condition beginning January 2015, "the ALJ still had to evaluate whether [she] medically equaled Listing 11.02 for the period from her alleged onset date . . . through December 31, 2014." *Id.*

Hall also argues that the ALJ erred by discounting the opinion of her treating physician. Doc. No. 13 at 8–10. She contends that the ALJ did not provide sufficient reasons to discount Dr. Glascock's opinion. Doc. No. 20 at 4. In addition, Hall argues that Judge Mahoney should have applied a harmless-error review rather than a substantial-evidence review when determining whether the record supported the ALJ's decision to discount the treating source opinion. Doc. No. 20 at 4–5.

Hall argues that the ALJ erred in his step-five conclusions. She contends that the ALJ's step-five denial of benefits is not supported by substantial evidence because the ALJ failed to fully develop the record regarding an apparent conflict between the VE's testimony and the DOT. Doc. No. 13 at 3–7. According to Hall, without further developing the record regarding the apparent conflict, the ALJ's step-five determinations were unsupported by substantial evidence and warrant remand. Doc. No. 20 at 2–3.

Finally, Hall argues that the ALJ who decided her claim was not properly appointed as required by the Supreme Court's recent interpretation of the Appointments Clause in *Lucia v. SEC*, 138 S. Ct. 2044 (2018). *Id.* at 6–12. I will address each of Hall's arguments separately.

### A. *Failure to Expressly Address Listings*

The purpose of the listings is to streamline the decision-making process by identifying claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational backgrounds. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). The Supreme Court has explained:

The listings . . . are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify . . . .

For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment. . . . A claimant cannot qualify for benefits under the "equivalence" step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment.

*Sullivan v. Zebley*, 493 U.S. 521, 529–32 (1990) (footnotes omitted) (citations omitted). The claimant has the burden of proving that his or her impairment meets or equals a listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

The issue here is whether the ALJ erred at step three by summarily concluding that Hall's impairments did not meet or medically equal any listing without expressly mentioning or articulating reasons why Hall's impairments failed to medically equal certain listings.  At step three of the sequential evaluation process, "[t]he ALJ must determine whether a 'medical equivalence' exists between a claimant's impairment and a listed impairment." *Myers v. Colvin*, 721 F.3d 521, 524–25 (8th Cir. 2013) (quoting 20 C.F.R. §§ 404.1526(e), 416.926(e)).  However, the Eighth Circuit has repeatedly held that "[a]n ALJ's failure to address a specific listing or to elaborate on his conclusion that a claimant's impairments do not meet the listings is not reversible error if the record supports the conclusion." *Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017); *see also Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) ("There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record."); *Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 721 n.3 (8th Cir. 2005) (noting "[t]he fact that the ALJ's decision does not specifically mention listing 112.05E does not affect" the review for

substantial evidence); *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003) ("Although it is preferable that ALJs address a specific listing, failure to do so is not reversible error if the record supports the overall conclusion . . . .").

Hall does not address this precedent but points to other cases, contending they require an ALJ to articulate his or her analysis regarding the medical equivalency of all impairments to relevant listings at step three. Hall cites *Hesseltine v. Colvin*, in which the Eighth Circuit remanded the claimant's case after "[t]he ALJ summarily concluded that [the claimant's] combination of impairments did not medically equal the criteria of Listing 12.05C, but . . . did not provide the reasons for her conclusion." *Hesseltine v. Colvin*, 800 F.3d 461, 466 (8th Cir. 2015). Hall also cites *Mann v. Colvin*, 100 F. Supp. 3d 710, 721 (N.D. Iowa 2015), a case I remanded because the ALJ failed to expressly analyze whether the claimant's migraines medically equaled Listing 11.03.

At first glance these cases may appear to contradict Eighth Circuit precedent about the need to cite and discuss specific listings. In fact, however, they simply delineate some of the boundaries of that precedent. In *Hesseltine*, the error was not just that the ALJ provided a simple conclusion without analysis when addressing a listing at step three. Instead, the ALJ failed to sufficiently discuss how the combined effect of the claimant's impairments were not equivalent to the relevant listing anywhere in the decision.[4] *Hesseltine*, 800 F.3d at 466. It was this complete lack of analysis that caused the court to hold that it could not say "whether there was sufficient evidence to support the ALJ's decision" without further explanation. *Id.* Similarly, the error in *Mann* was not just that the ALJ had failed to expressly address whether the claimant's migraines medically equaled Listing 11.03. In addition to this omission, I found sufficient evidence in the record to suggest that the claimant's migraines could be equivalent to the listing. *Mann*,

---

[4] The ALJ's failure to provide reasoning also left the court unsure of whether the ALJ had followed a Program Operations Manual System (POMS) guideline in assessing whether the claimant's impairment medically equaled a listing, a fact the Eighth Circuit found important in finding error. *Hesseltine*, 800 F.3d at 466.

100 F. Supp. 3d at 720–21. Because the ALJ's decision lacked sufficient analysis to explain why Mann's migraines could not medically equal Listing 11.03 and the record contained sufficient evidence that they could, I was unable to find that the ALJ's decision was supported by substantial evidence. *Id.*; *see also Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 823 (8th Cir. 2008) ("Because the ALJ failed to support his finding that [the claimant] did not meet or medically equal the severity of a listed impairment, and because the record contains inconsistencies on this issue, we are unable to determine whether substantial evidence supports the ALJ's finding that [the claimant's] impairments did not meet or medically equal listing 112.05D.")

Social Security Ruling (SSR) 17-2p helps further explain how *Hesseltine* and *Mann* remain consistent with the Eighth Circuit's precedent.[5] It also provides more authority for the Eighth Circuit's approach and more clarity regarding what the review for substantial evidence should look like in this type of case. In SSR 17-2p, the SSA discussed whether ALJs are required to expressly address listings and articulate their reasons why a claimant's impairments are not medically equivalent to those listings.

> If an [ALJ] . . . believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the [ALJ] is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An [ALJ]'s articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that

---

[5] SSRs "are not binding or conclusive" for federal courts and "have neither the force nor effect of law or Congressionally promulgated regulations." *Minnesota v. Apfel*, 151 F.3d 742, 748 (8th Cir. 1998) (quoting *Newton v. Chater*, 92 F.3d 688, 693 (8th Cir. 1996)). However, they are "entitled to deference" as long as they are not "plainly erroneous or inconsistent with the Act or regulations." *See id.* (quoting *Chavez v. Department of Health & Human Services*, 103 F.3d 849, 851 (9th Cir. 1996)). Below I will discuss the strength of the Eighth Circuit's and SSR 17-2p's approach and their consistency with the Social Security Act and its companion regulations.

is sufficient for a subsequent reviewer or court to determine the basis for
the finding about medical equivalence at step 3.

SSR 17-2p, 2017 WL 3928306, at *4 (March 27, 2017).[6]

The errors identified in *Hesseltine* and *Mann* are easy to identify when considered in light of SSR 17-2p. By not articulating reasoning that could support the conclusion that the claimant's impairments failed to meet or medically equal a relevant listing at any point in the decision, the ALJ in *Hesseltine* did not articulate "the reason(s) why the individual [was] or [was] not disabled at a later step" in a way that was "sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step [three]." *See* SSR 17-2p. By finding sufficient evidence that the claimant's migraines could medically equal a listed impairment in *Mann*, I essentially held that the ALJ incorrectly believed "the record d[id] not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment," and the subsequent lack of analysis rendered me incapable of finding substantial evidence that Mann's impairment was not equivalent to the listing. *See* SSR 17-2p.

There are multiple reasons why the approach outlined in SSR 17-2p, and applied in the cases discussed above, is correct and consistent with the Social Security Act and its companion regulations. First, the regulation regarding medical equivalence does not address articulation requirements, while certain other regulations do. *Compare* 20 C.F.R. § 404.1527 (containing clause regarding articulation for evaluating opinion evidence), *and id.* § 404.1520c (same), *with id.* § 404.1526 (containing no such articulation clause in the medical equivalence regulation). Even when the regulations do say that the ALJ should articulate reasons, ALJ's are given some flexibility in how they do so. *Id.* § 404.1527 (stating that the ALJ "generally should explain the weight given to opinions . . . *or otherwise ensure* that the discussion of the evidence in the

---

[6] The SSR only discusses medical equivalence. It does not discuss the articulation requirements for impairments that are listed and argued to meet the listings.

determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case") (emphasis added); *id.* § 404.1520c ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.").

Regardless, under SSR 17-2p and the case law, ALJs are still required to articulate "the reason(s) why the individual is or is not disabled" in a way that permits a court to understand and review the ALJ's step-three conclusions for substantial evidence. *See* SSR 17-2p. The fact that SSR 17-2p and the case law allow analysis and reasoning articulated at later steps to be sufficient does not conflict with the Social Security Act's requirement that any decision that "involves a determination of disability and which is in whole or in part unfavorable" to the claimant must "contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the . . . determination and the reason or reasons upon which it is based." 42 U.S.C. § 405(b)(1).

The case law and SSR 17-2p are also consistent with the theory and purpose of the listings. Although disability is broadly defined as the "inability to engage in any *substantial* gainful activity" due to impairments, *see* 42 U.S.C. § 423(d)(1)(A) (emphasis added); 20 C.F.R. § 404.1505, the purpose of the listings is to establish those impairments that are "severe enough to prevent an individual from doing *any* gainful activity." *See* 20 C.F.R. § 404.1525 (emphasis added). As the Supreme Court has explained,

> [t]he Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. . . . The reason for this difference between the listings' level of severity and the statutory standard is that . . . the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work.

*Sullivan*, 493 U.S. at 532. This distinction between disability determined under the listings at step three and disability determined at other steps supports the Eighth Circuit's and SSA's approach. Because the listings analyzed at step three require proof of a higher level of severity than is statutorily required to prove disability at steps four and five, it need not be reversible error for an ALJ to bypass an in-depth analysis of a claimant's failure to meet the higher standard at step three so long as the decision later explains why the claimant is not disabled under the lower standard. Considering the entire decision and all of the evidence in the record, rather than simply the completeness of one step of the analysis, is nothing new. Indeed, it is precisely what reviewing courts are required to do in Social Security cases. *See* 42 U.S.C. § 405(g); *see also Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

I will now proceed to review the decision and the record as a whole to determine whether the ALJ's conclusions are supported by substantial evidence. In doing so, I take note of the insight that SSR 17-2p and the relevant case law provide in understanding what is necessary to find substantial evidence when an ALJ has failed to expressly address whether an impairment is medically equivalent to a listing. As I review for substantial evidence, I will consider the extent to which the evidence in the record as a whole suggests that Hall's unlisted impairments could medically equal a listing and whether the ALJ's analysis sufficiently resolves any inconsistency between the conclusions and the record. *See Scott ex rel. Scott*, 529 F.3d at 823 (noting that record's inconsistencies with step-three conclusions, combined with the ALJ's insufficient analysis, warranted remand); *Mann*, 100 F. Supp. 3d at 720–21 (finding sufficient evidence that the claimant's migraines were medically equal in severity to a listed impairment to find ALJ erred by failing to further articulate step three conclusions). I will also consider the extent to which the ALJ articulated reasoning at subsequent steps that can sufficiently explain the ALJ's step-three conclusions. *See Hesseltine*, 800 F.3d at 466 (holding that the decision lacked sufficient analysis at any point for the court to appropriately review the step three conclusions); *see also Scott ex rel. Scott*, 529 F.3d at 822 ("[A] remand is

appropriate where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision."). *Compare Yeatman v. Colvin*, No. 14-CV-00255, 2014 WL 7330627, at *2 (E.D. Ark. Dec. 18, 2014) (remanding because although the ALJ concluded claimant's migraines did not medically equal a listing, the ALJ did not sufficiently discuss evidence related to this conclusion at step-three or when determining claimant's RFC), *with Savage v. Colvin*, 41 F. Supp. 3d 763, 772–73 (S.D. Iowa 2014) (acknowledging that ALJ did not expressly discuss a listing related to migraines at step three but sufficiently discussed migraines in the RFC for the court to find that the ALJ's step-three conclusion fell "within the zone of reasonable choice"). I will address each relevant listing in turn.

### 1. Listing 11.02

Hall argues that the ALJ should have expressly analyzed whether her migraines were medically equivalent to Listing 11.02 regarding seizures. The SSA has identified listings regarding seizures as the most closely analogous listing for severe chronic migraines. *See Mann*, 100 F. Supp. 3d at 719 (discussing an example published in POMS DI 24505.015, which is no longer listed in the SSA's POMS, that compared migraines as medically equivalent to former Listing 11.03). Migraines can be medically equivalent to seizures under Listing 11.02 as long as the evidence proves that their severity is "at least of equal medical significance to those of a listed impairment." *See* 20 C.F.R. § 404.1526.

Listing 11.02 contains four different circumstances in which the listing may be met; two of them are applicable here. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.02 (2017). First, the listing may be met if severe migraines "occur[] at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." *Id.* § 11.02(B) (citation omitted). The listing may also be met if severe migraines

16

occur[] at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:
1. Physical functioning; or
2. Understanding, remembering, or applying information; or
3. Interacting with others; or
4. Concentrating, persisting, or maintaining pace; or
5. Adapting or managing oneself.

*Id.* § 11.02(D).

The record contains abundant evidence that Hall suffers from migraines and headaches. AR 216, 370, 375–76, 378, 387, 420, 543, 646, 922, 1003–04, 1034–35. The record also contains evidence that the treatment of Hall's migraines involved a lot of trial and error, and at times her symptoms were possibly severe enough to meet Listing 11.02. *Id.* at 216, 375, 378, 390, 393, 922, 1003–04, 1034–35, 1047, 1223. Regarding Hall's migraines, the ALJ found that "the record indicates that she experienced improvement with medication adjustments and occasional changes." AR 18. The ALJ relied on this finding in concluding that Hall's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

Although there is some evidence that Hall's migraines could be equivalent to Listing 11.02, I do not reweigh the evidence but review only to determine whether there is substantial evidence to support the ALJ's conclusions. *See Baldwin*, 349 F.3d at 555. In this case, there is substantial evidence that Hall's migraines have improved with treatment and lifestyle changes to the extent that Hall has not suffered sufficiently severe and frequent migraines for at least three months despite treatment so as to equal Listing 11.02. Although for much of the relevant time frame no single treatment permanently worked for Hall, multiple types of treatment resulted in at least temporary improvement. AR 375, 390, 420, 532, 920, 922–23, 1043, 1052, 1063. Many times when Hall reported returning or worsening headaches and migraines, some other health problem was usually reported or was a likely cause of them. *Id.* at 31, 551–52, 646, 1055–56, 1063. Further,

the fact that Hall often did not report headaches or migraines when receiving health care goes against finding a three-month period of sufficiently severe migraines to meet the listing, especially when Hall reported few migraines in the latter part of the relevant time frame. *Id.* at 588, 640, 987, 990, 1008–13, 1021, 1023, 1066, 1070–74, 1101, 1116, 1194–206, 1228, 1231, 1236.

I also find that elsewhere in the decision, the ALJ sufficiently discussed the reasons why Hall would not be found to meet Listing 11.02 while articulating his analysis and conclusions regarding Hall's disability. In determining Hall's RFC, the ALJ discussed the number and frequency of Hall's migraines, the history and results of Hall's treatment for migraines, and some of the limitations allegedly caused by migraines. AR 17–21. Records showed her migraines improved with treatment. *Id.* Generally, the ALJ did not find any marked limitation in Hall's physical functioning, understanding, remembering, interacting with others, concentrating, persisting, maintaining pace or ability to adapt or manage herself. *Id.* at 16–17. The ALJ also discussed the severity of Hall's migraines and his decision to discount Hall's and her doctor's credibility. *Id.* at 17–21. All of this is sufficient to explain why the ALJ could find insufficient evidence that Hall's migraines equal Listing 11.02.

For the foregoing reasons, I find that the ALJ did not err by failing to expressly address Listing 11.02 at step three, and the ALJ's conclusions regarding migraines are supported by substantial evidence.

### 2.    *Listing 14.09D*

Hall argues that the ALJ should have expressly analyzed whether her fibromyalgia was equivalent to Listing 14.09D. Doc. No. 13 at 10–12. The SSA has addressed fibromyalgia and medical equivalence in SSR 12-2p. SSR 12-2p, 2012 WL 3104869 (July 25, 2017). SSR 12-2p states that at step three the ALJ should "determine whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at

least one other medically determinable impairment." SSR 12-2p.  Under Listing 14.09D, a claimant meets the listing if they experience

> [r]epeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.09(D) (2017).  Although the SSR notes Listing 14.09D only as an example, another district court in the Eighth Circuit has held that failure to expressly consider Listing 14.09D was error.  *See Schleuning v. Berryhill*, No. 16-CV-5009, 2017 WL 1102607, at *4 (D.S.D. Mar. 23, 2017).

There is little evidence in this record to suggest that Hall's fibromyalgia, alone or in combination with other impairments, could be medically equivalent to Listing 14.09D. The evidence repeatedly notes that Hall suffers from fibromyalgia and symptoms required by the listing such as fatigue and malaise.  AR 21, 218, 307–08, 381, 390, 988, 1109. However, there is little analysis and, despite being listed as an issue, fibromyalgia was never addressed in depth by Hall's treating physicians.  At times when fibromyalgia was addressed, it was often in connection with other issues, such as back pain, for which the ALJ found an additional impairment that was compared to a listing.  *Id.* at 1062–63. Further, there is evidence that treatment with medications such as Lyrica helped Hall's fibromyalgia and related impairments.  *Id.* at 291, 370, 420, 895, 1018, 1044.

I also find that the ALJ adequately analyzed and discussed the evidence in the record sufficient to explain why Hall could not medically equal Listing 14.09D, alone or in combination with another impairment.  The ALJ's analysis of fibromyalgia is limited. This is not necessarily error, however, because the record contains "minimal treatment records for" fibromyalgia.  AR 19.  The ALJ generally grouped Hall's fibromyalgia with her other "pain producing impairments."  *Id.*  The ALJ discounted Hall's credibility regarding these impairments, stating that her allegations were "not consistent with or

supported by the evidence as a whole." *Id.* In discussing the "pain producing impairments," the ALJ discussed the lack of treatment records generally, the lack of medical evidence in the tests and treatments Hall did receive and noted that many of her pain related symptoms improved with medication. *Id.* The ALJ also noted that much of the pain Hall experienced stemmed from other impairments, such as degenerative disk disease, for which she apparently did not seek treatment. *Id.* The ALJ addressed limitations regarding daily living, social functioning and task completion at step three and in the RFC analysis and found no marked limitations. *Id.* at 16–21. What limitations the ALJ did find were specifically noted in the RFC determinations: Hall's fatigue and fibromyalgia, in combination with other impairments, required sedentary exertional limitation and a need to avoid cold environments. *Id.* at 21.

For the foregoing reasons, I find that the ALJ did not err by failing to expressly address Listing 14.09D at step three, and the ALJ's conclusions regarding fibromyalgia are supported by substantial evidence.

### 3. *Listing for RSD/CRPS*

Hall argues that the ALJ should have expressly analyzed whether her RSD/CRPS was medically equivalent to a listing. Doc. No. 13 at 10–12. Judge Mahoney did not address this argument in the R&R because Hall did not state which listing should have been considered. Doc. No. 19 at 6 n.6. I do not find this dispositive, however, as it is the responsibility of the ALJ to determine medical equivalence regardless of whether the claimant argues for specific listings. *See Mann*, 100 F. Supp. 3d at 719–20 (explaining that the ALJ should have considered a relevant listing regardless of whether the claimant drew attention to it).

RSD/CRPS does not have a listing, but the SSA has promulgated a ruling discussing it. SSR 03-2p states what should be done when RSD/CRPS is found to be a medically determinable impairment:

> [T]he specific findings in each case should be compared to any pertinent listing to determine whether medical equivalence may exist. Psychological manifestations related to RSDS/CRPS should be evaluated under the mental disorders listings, and consideration should be given as to whether the individual's impairment(s) meets or equals the severity of a mental listing.

SSR 03-2p, 2003 WL 22399117, at *6–7 (October 20, 2003) (footnote omitted). Some of the relevant listings discussed by other courts are Listing 11.14 (peripheral neuropathy), listings in section 1.00 of the appendix (musculoskeletal disorders) and listings for mental health issues associated with RSD/CRPS, such as 12.04 (depression) and 12.07 (somatoform disorder). *See, e.g.*, *Ronning v. Colvin*, 555 F. App'x 619, 622 (7th Cir. 2014) (somatoform disorder); *Waddell v. Berryhill*, No. 18-CV-00642, 2019 WL 2009185, at *1 (D. Utah May 7, 2019) (peripheral neuropathy); *Rassett v. Astrue*, No. 10-CV-3751, 2011 WL 3610648, at *12 (D. Minn. Aug. 1, 2011) (musculoskeletal disorders and depression), report and recommendation adopted, No. 10-CV-3751, 2011 WL 3607169 (D. Minn. Aug. 16, 2011).

Hall began reporting symptoms of RSD after a ganglion cyst was removed from her left foot in 2010. AR 291, 453. The record shows that Hall frequently expressed pain that was attributed to RSD/CRPS and experienced swelling, particularly in her lower left leg. *Id.* at 287–91, 895. One of these times she expressed concerns about getting blood clots in the leg, which the physician believed were medically unfounded. *Id.* at 287. Generally, Hall saw improvement in the condition of her legs through treatment such as physical therapy, but she continued to report pain. *Id.* at 288–91, 895. Medication seemed to help her pain. *Id.* at 291, 370, 895. At least one examining physician, Paul Conditt, Psy.D., stated that Hall's "impairments all revolve around the pain associated with RSD. It is largely uncontrollable and sitting, standing, and walking all cause significant problems for her. Her mood would likely improve if her physical problems weren't so severe." *Id.* at 455.

In general, the ALJ did not provide much specific discussion of RSD/CRPS. Like fibromyalgia, it appears the ALJ grouped RSD/CRPS with other "pain producing

impairments." *Id.* at 19. In discussing those impairments, the ALJ noted that the record contained little evidence of many of Hall's alleged limitations, Hall experienced improvement in her pain with medication and Hall could stand and walk without great difficulty. *Id.* The ALJ took note of Dr. Conditt's opinion but assigned it only partial weight because Dr. Conditt examined Hall just once and did not have a treating relationship. *Id.* at 20. The ALJ ultimately concluded that Hall suffered from only moderate limitations related to her RSD/CRPS. *Id.* at 16, 20.

The record does not contain sufficient evidence to show that Hall's RSD/CRPS is medically equivalent to a listing. Listing 1.02 (major dysfunction of joints) requires gross anatomical deformity, chronic joint pain and stiffness, limited or abnormal motion of the affected joint, findings on imaging of the affected joint, and either (1) involvement of a major weight-bearing joint resulting in inability to walk or (2) involvement of a joint in both upper extremities that "result[s] in inability to perform fine and gross movements effectively." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.02 (2017).

Although Hall's RSD/CRPS and other impairments resulted in pain in Hall's ankles, calves, knees, shoulders and wrists, the record does not support that these impairments alone or in combination could meet Listing 1.02. Despite pain from RSD/CRPS and issues such as mild carpal tunnel syndrome and degenerative disease in her shoulder, the appearance and function of Hall's upper extremities was generally found normal. AR 371, 1020–21, 1167–70. Hall's RSD/CRPS was most associated with pain and other symptoms in her legs, particularly the lower left leg. *Id.* at 287–91. The record shows that Hall had contracture in some joints in the left leg, but at other times her joints were found to be healthy. *Id.* at 287–91, 1165–66, 1233. Regardless, Hall does not suffer limited or abnormal motion from these issues; her records show that she saw significant improvement in joint mobility through treatment such as physical therapy. *Id.* at 287–91. Further, she also was generally found to have no problems walking. *Id.* at 308, 372–73, 1020. The record does not contain sufficient evidence to find that Hall's RSD/CRPS is medically equivalent to Listing 1.02.

The record also does not support that Hall's RSD/CRPS could be found medically equivalent to Listing 11.14. Listing 11.14 requires showing either (1) "[d]isorganization of motor in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities" or (2) marked limitation in physical functioning and one of three other work-related factors. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.14 (2017). As noted above, Hall's upper extremities were generally found normal and the issues with her lower extremities did not result in significant issues with standing and walking. Further, the ALJ's analysis explained why Hall did not suffer marked limitations in physical function or the ability to understand, remember or apply information, interact with others, or concentrate, persist and maintain pace.

Lastly, there was no error in the ALJ's reasoning and findings regarding mental health issues related to Hall's RSD/CRPS. The ALJ expressly analyzed whether Hall's depression met the listing. AR 16–17. The ALJ found the listing was not met, and Hall does not challenge that conclusion. There is also no foundation in the record to find Listing 12.07, regarding somatoform disorder, applies in this case. Two of Hall's RFC reports from her treating physician show that Hall does not suffer from somatoform disorder. *Id.* at 1150, 1179. Although the ALJ's analysis regarding Hall's RSD/CRPS could have been clearer and more extensive, substantial evidence supports the ALJ's conclusions.

## B.    *Medical Opinion Evidence*

Hall argues that the ALJ erred by giving only partial weight to the RFC assessment completed by her treating physician, Daniel Glascock, M.D. Doc. No. 13 at 8–10; Doc. No. 20 at 3–5. Dr. Glascock filled out a check-the-box RFC opinion form that found several severe limitations such as pain interfering constantly with attention and concentration, a marked limitation in dealing with work stress, and a limited ability to continuously sit, stand and walk. AR 1150–51. The ALJ stated that "[t]he evidence of

record does not fully support the assessed limitations" and cited inconsistencies regarding Hall's ability to sit as an example. *Id.* at 21. Hall argues that the alleged inconsistencies regarding her ability to sit for extended periods of time do not constitute "good reasons" for discounting Dr. Glascock's RFC opinion. Doc. No. 20 at 3–5.

A treating physician's opinion is entitled to substantial weight, but the Commissioner may discount or disregard the opinion if other medical assessments are supported by more thorough or better evidence. *Fentress v. Berryhill*, 854 F.3d 1016 (8th Cir. 2017). When medical evidence in the record as a whole contradicts the treating physician's opinion, that opinion is also afforded less deference. *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999). If the opinion is conclusory or inconsistent with the record, it may be given limited weight. *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016). The ALJ may also discount the opinion if it is inconsistent with the physician's own clinical treatment notes. *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). The ALJ must give good reasons for the weight given to the opinion. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000); *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). A treating physician's claim that the claimant is disabled or unable to work "does not carry any special significance." *Davidson*, 578 F.3d at 842. "A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner." *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007).

The Eighth Circuit has explained that RFC opinions in which a physician merely checks boxes or circles answers without citing medical evidence "possess 'little evidentiary value.'" *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (quoting *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014)); *see also Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). Dr. Glascock's opinion consists mainly of checked boxes and circled answers, and there is no way to determine what records or facts Dr. Glascock used to form his conclusions. This alone lends support to the ALJ's decision to discount the opinion.

In any event, substantial evidence in the record supports the ALJ's decision to discount Dr. Glascock's opinion. The ALJ found inconsistencies and mentioned limitations regarding sitting as one example. Although Dr. Glascock frequently noted Hall's pain in her legs and at times noted issues with walking, none of Dr. Glascock's treatment notes mention limitations with sitting. AR 1154–288. The fact that many of the limitations identified in the opinion "stand alone" and were not addressed in treatment notes is a valid reason to discount the opinion. *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (citation omitted). There are instances in the record when Hall did not identify that she had difficulties with sitting. *Id.* at 21, 48–49, 228, 246. There are also instances where she did identify that she had issues sitting. *Id.* at 212, 223, 228, 230, 253. At the very least, this is one of those instances in which the ALJ's decision to discount an opinion because of inconsistencies falls within a zone of choice that will not warrant reversal. *See Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994). For the foregoing reasons, I find that the ALJ's conclusion about the weight to give Dr. Glascock's opinion is supported by substantial evidence.

## C.    *Vocational Expert Testimony and the DOT*

Hall argues that the ALJ erred at step five by failing to resolve an apparent conflict between the VE's testimony and the DOT. Doc. No. 13 at 5–6; Doc. No. 20 at 2–3. In Hall's RFC determination, the ALJ found that Hall could "remember, understand, and carry out simple, routine instructions and tasks consistent with SVP levels 1 or 2 type jobs." AR 17. Although all the jobs discussed in the VE's testimony have a Specific Vocational Preparation (SVP) level of two, Hall argues that the reasoning level of three for "surveillance system monitor" fundamentally conflicts with the statement in the ALJ's RFC finding that Hall be limited to "simple, routine instructions and tasks." Doc. No. 13 at 5–6; Doc. No. 20 at 2. Because the ALJ did not question the VE about this conflict, Hall contends that the job of surveillance system monitor could not be supported by

substantial evidence, and the remaining occupations have an insufficient number of jobs to find that Hall is disabled.  Doc. No. 13 at 5–6; Doc. No. 20 at 2–3.

At step five, the ALJ bears the burden of proving that jobs exist in significant numbers that someone with the claimant's age, education, experience and limitations can perform.  *See Gann v. Berryhill*, 864 F.3d 947, 952 (8th Cir. 2017); 20 C.F.R. § 416.960(c)(2).  The ALJ may rely on VE testimony to meet this burden, but "VE testimony that conflicts with the DOT 'does not constitute substantial evidence upon which the Commissioner may rely to meet the burden.'" *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014) (quoting *Kemp v. Colvin*, 743 F.3d 630, 632 (8th Cir. 2014)).  When a conflict exists, the ALJ has an "affirmative responsibility" to ask about the conflict and receive an explanation regarding that conflict before relying on the VE testimony.  *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014) (discussing *Kemp*).

The first issue here is whether any conflict actually exists between the ALJ's RFC determinations, the VE's testimony and the DOT.  SVP levels are "defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Dictionary of Occupational Titles, Appendix C.  An SVP Level One job requires only short demonstrations, whereas an SVP Level Two job requires up to one month of training.  *Id.*  In contrast, reasoning levels include "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance."  *Id.*  A reasoning level of three means that a worker must "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations."  *Id.*

Judge Mahoney concluded that no conflict exists because the RFC's statement about Hall's ability to perform some functions "consistent with" a job having an SVP level of one or two expressed a limitation on the SVP level, not the reasoning level.  Doc. No. 19 at 29.  Although I agree with Judge Mahoney that this is one appropriate way to

interpret the ALJ's finding, it is not the only way. Judge Mahoney essentially reads the statement as saying that Hall's limitations in remembering, understanding and carrying out simple and routine instructions and tasks are consistent with *any* job that has an SVP level of one or two. However, the statement can also be interpreted as saying that Hall is able to remember, understand and carry out simple and routine instructions and tasks consistent with the type of job that has an SVP level of one or two. In other words, it could mean that the highest level of work Hall can perform is remembering, understanding and carrying out simple and routine tasks as long as the training for the job is consistent with an SVP level of one or two, i.e., training of less than one month. Both interpretations convey that the ALJ wished to limit Hall to jobs with an SVP level of two or lower, which is consistent with the record.[7]  However, only the latter interpretation suggests that the relevant portion of Hall's RFC is not defined by SVP level alone, and that there may be jobs Hall cannot perform even if the job has an SVP level of one or two. In other words, while the former interpretation suggests no conflict exists, the latter suggests a conflict exists if applying commonsense understanding, carrying out written, oral or diagramed instructions, or dealing with problems involving several concrete variables exceeds the abilities of someone who is only able to perform "simple and routine instructions and tasks."

Ultimately, I agree with Judge Mahoney and find that the ALJ did not err. In finding that Hall is "able to remember, understand, and carry out simple, routine instructions and tasks consistent with SVP levels 1 or 2 type job," the ALJ stated part of Hall's RFC in terms of SVP level. Such a reading does not lead to a conflict between

---

[7] In the hearing record, the ALJ stated that Hall is "[a]ble to remember, understand, and carry out simple and routine instructions and tasks consistent with SVP levels 1 and 2 type jobs." AR 54. The VE responded by inquiring, "Your honor, just to clarify, are — you're requesting SVP 1 or 2?" and the ALJ responded in the affirmative. *Id.* at 55. The VE then proceeded to name three different jobs and specifically noted that each was a sedentary job with an SVP level of two. *Id.* at 55–56. This clearly establishes that the ALJ only wanted the VE to consider jobs with an SVP level of two or lower.

the DOT and VE's testimony, and thus I need not determine whether a claimant who is limited to "simple and routine instructions and tasks" invariably can or cannot perform a job with a reasoning level of three.

Although stating part of a claimant's RFC limitations in terms of SVP level may be improperly ambiguous or overbroad, or may lead to inconsistent findings in some circumstances, that is not the case here. There is no inherent inconsistency in stating that Hall has the ability (1) to carry out simple and routine instructions and tasks and (2) to perform any job that has an SVP level of one or two and fits Hall's other limitations. SVP levels and reasoning levels are generally correlated: jobs that require longer training generally have high reasoning levels and jobs that require limited training usually have low reasoning levels. However, the correlation runs stronger in one direction: jobs that require very little training almost never require reasoning levels above two, whereas jobs that require longer training have greater variance in reasoning level and frequently do not require a high reasoning level.[8] For example, the DOT contains only two SVP Level Two jobs, and no SVP Level One jobs, that require a reasoning level higher than three.[9] In contrast, there are several jobs that have an SVP level of five or six but range in reasoning level from two to five.[10] Overall, the vast majority of SVP level two jobs, and

---

[8] To analyze the DOT listings, I searched the DOT on Westlaw. I used variations of the search, "SPECIFIC VOCATIONAL PREPARATION: Level" /2 (x) and "Reasoning: Level" /2 "(y)" and sedentary and DICOT, with "x" representing the desired SVP level and "y" the reasoning level. I included "sedentary" in order to tailor my results to Hall's case (her RFC required sedentary work) and "DICOT" (Westlaw's DOT marker) to ensure that I only found DOT listings. All my findings come from these searches.

[9] *See* DOT 237.367-018 (information clerk: SVP – two, Reasoning – four); DOT 241.367-038 (investigator, dealer accounts: SVP – two, Reasoning – four).

[10] *E.g.*, DOT 159.042-010 (laserist: SVP – six, Reasoning – 5); DOT 842.684-014 (drywall applicator: SVP – six, Reasoning – two); DOT 840.684-010 (glass tinter: SVP – five, Reasoning – two); DOT 955.463-010 (sanitary landfill operator: SVP – five, Reasoning – two).

almost all SVP level one jobs, have a reasoning level of two or less.[11] A key inference that can be drawn from this is that by limiting SVP to levels one or two, an ALJ would essentially limit potential jobs to those that have a reasoning level of one or two. Jobs with an SVP level of one or two and a reasoning level of three are outliers. Although one of the jobs the ALJ relied upon in determining disability came from this group of outliers, Eighth Circuit precedent helps explain why that is not error.

While a conflict between a VE's testimony and the DOT can lead to reversible error, the Eighth Circuit has held that "[a] claimant's reliance on the DOT as a definitive authority on job requirements is misplaced because DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007)). Further, "[t]he DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities. . . . In other words, not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT." *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000) (citations omitted).

In this case, the ALJ stated the hypothetical and a portion of Hall's RFC in terms of SVP level. That determination is supported by substantial evidence. The VE reported jobs that were consistent with the SVP level as well as Hall's other limitations. The fact that one of those jobs contained a reasoning level of three was not automatically inconsistent with the ALJ's RFC determinations. Because DOT definitions are "generic job descriptions" that approximate "maximum requirements," there is no inherent

---

[11] Based on the searches conducted as described *supra* note 11, I found that there are 1,198 jobs with SVP Level Two and Reasoning Level Two and 330 jobs with SVP Level Two and Reasoning Level One compared to 65 jobs with SVP Level Two and Reasoning Level Three and one job with SVP Level One and Reasoning Level 3. Overall, almost 96% of sedentary jobs listed as SVP Level Two had a reasoning level of one or two (1,528 of 1,598). There were similar results for SVP Level One jobs.

inconsistency in finding that a claimant who is capable of performing sedentary jobs that have an SVP level of two and a reasoning level of two is capable of performing the few sedentary jobs that have an SVP level of two but a reasoning level of three. *See Moore*, 623 F.3d at 604. Accordingly, there was no error. *See id.* at 605 ("Because substantial evidence supports the ALJ's phrasing of the hypothetical to the vocational expert, and there was no conflict between the vocational expert's testimony and the DOT, the ALJ properly relied on the testimony.")

### D.    *Appointments Clause Challenge*

Hall argues for remand because the ALJ was not appointed as required under the Supreme Court's holding in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). Doc. No. 13 at 12–24. In *Lucia*, the Supreme Court held that administrative law judges of the Securities and Exchange Commission are "Officers of the United States" within the meaning of the Appointments Clause, meaning that the President, a court of law or department head must appoint them. *Lucia*, 138 S. Ct. at 2049. Hall argues that this holding, when combined with the lack of an Appeals Council exhaustion requirement under *Sims v. Apfel*, 530 U.S. 103, 112 (2000) ("Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."), permits a claimant to challenge the appointment of a Social Security ALJ for the first time during judicial review. Doc. No. 13 at 13–15. Hall argues that even if there was an exhaustion requirement, the constitutional claims exception and the futility exception apply. *Id.* at 15–18. In the alternative, Hall asks for discretionary review of the Appointments Clause challenge under *Freytag v. Commissioner*, 501 U.S. 868 (1991). *Id.* at 18–20.

I have addressed this issue before and concluded that Social Security "claimants have forfeited the Appointments Clause issue by failing to raise it during administrative proceedings." *E.g.*, *Stearns v. Berryhill*, No. 17-CV-2031, 2018 WL 4380984, at *5 (N.D. Iowa Sept. 14, 2018). Judge Mahoney noted in her R&R that every district court

within the Eighth Circuit to consider this issue has reached the same conclusion. *See* Doc. No. 19 at 33–34. In the absence of binding authority to the contrary, I find that Hall's arguments are adequately addressed by our precedent. *See, e.g.*, Stearns, 2018 WL 4380984, at *5. I find nothing in Hall's arguments that compels me to amend my analysis of this issue in prior cases. Because Hall did not raise this issue before or during the ALJ's hearing or before the ALJ's decision became final, she has forfeited the issue for consideration on judicial review. As for Hall's alternative argument, I do not accept that this is one of those "rare cases" when review of an Appointments Clause challenge is appropriate under *Freytag*. *See Freytag*, 501 U.S. at 879.

## V.   *CONCLUSIONS*

For the reasons set forth herein:

1.     Plaintiff's objections (Doc. No. 20) to the Report and Recommendation (Doc. No. 19) are **overruled**.

2.     I **accept** the Report and Recommendation without modification. *See* 28 U.S.C. § 636(b)(1).

3.     Pursuant to Judge Mahoney's recommendation:

a.     The Commissioner's disability determination is **affirmed**; and

b.     Judgment shall enter against plaintiff and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 10th day of October, 2019.

_____
Leonard T. Strand, Chief Judge